UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROSA M. HERNANDEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>          Defendant. | No. CV 06-01501-VBK<br><br>MEMORANDUM OPINION AND ORDER<br><br>(Social Security Case) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

Plaintiff asserts four errors in the Administrative Law Judge's

("ALJ") decision:

1. Assessment of Plaintiff's residual functional capacity ("RFC");
2. Rejection of Plaintiff's credibility;
3. Incomplete hypothetical question to the vocational expert ("VE");
4. Whether the record was accurately and fairly summarized.

With regard to the first issue, the assessment of Plaintiff's RFC, she contends that the ALJ erred by not adopting certain aspects of the assessment made by testifying medical expert ("ME"). In particular, Plaintiff asserts error in the ALJ's rejection of the ME's opinion that she would miss more than three days of work per month due to her medical condition. She further asserts that the ALJ misstated the manipulative limitations given by the ME in his testimony. (Joint Stipulation ["JS"] at 6.)

The ALJ determined Plaintiff's RFC based upon an evaluation of the medical evidence. (Administrative Record ["AR"] 19.) The ALJ assessed that Plaintiff retains the RFC "to lift up to five pounds with the right (dominant) upper extremity; sit for six hours out of an eight-hour workday, with the ability to stand at her option; stand or walk for two hours out of an eight-hour workday; <u>no more than occasional gross handling and fine fingering with the right upper extremity</u>; no more than minimal exposure due to air pollutants; and mentally limited to simple and repetitive tasks with no public contact and limited interaction with supervisors and the coworkers." (AR 19.) (Emphasis added.) In doing so, the ALJ noted that there are no

treating physicians of record.[1]  The ALJ considered Dr. Wilson's opinion as set forth in the October 7, 2002 letter, noting that Dr. Wilson had assessed Plaintiff as having a functional ability to perform no prolonged or repetitive fine manipulative movements with the right hand for more than four hours in an eight-hour workday. (AR 19, 178.)

The ALJ also considered and gave some weight to a report of a consulting internist ("CE"), Dr. Klein (AR 20, 281-286).  Dr. Klein assessed that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, could walk and stand for six hours in an eight-hour workday with appropriate breaks, could sit for six hours in an eight-hour workday, with other limitations regarding squatting, crouching, kneeling, and stooping. (AR 286.)  Dr. Klein did not assess any manipulative or movement limitations with regard to Plaintiff's right upper extremity.  Nevertheless, the ALJ adopted a "more restrictive interpretation of the record in the light most favorable to the [Plaintiff]" (AR 20), based in part on his notation that her right hand pain and other symptoms were "exacerbated by writing, coloring and other repetitive use of her hand when she performed such tasks during her vocational rehabilitation training." (AR 20, 143.)  Thus, the ALJ adopted an RFC which essentially incorporated the

---

[1] Plaintiff asserts that she was treated by Lynn E. Wilson, M.D. from February 7, 2002 to October 7, 2002. (JS at 3, citing AR 177-181, 182-187.)  In fact, the portions of the AR cited are two letters, dated February 7, 2002 and October 7, 2002, directed to an insurance company and a claims service.  There is no indication in these letters of any treatment relationship, or that Dr. Wilson was a member of any treatment team, or supervised any treatment team or sources.  For these reasons, it is doubtful that Dr. Wilson may be considered a treating source.  See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030 (9th Cir. 2003); 20 C.F.R. §404.1502.  This issue will be further addressed at p. 11.

manipulative limitations assessed by Dr. Wilson.

The ME testified that Plaintiff was capable of no repetitive motions with her right hand, occasional fine manipulation, and occasional gross handling. (AR 436-437.)  The ME also asserted his opinion that Plaintiff would miss most days of work due to her medical conditions. (AR 443.)

Plaintiff asserts that the ALJ failed to cite any portion of the record to support his RFC findings. (JS at 6.)  In fact, that is not the case.  The ALJ gave substantial weight to Dr. Wilson's findings, and the RFC assessment regarding her right upper extremity is substantially the same as that rendered by Dr. Wilson in his determination of Plaintiff's functional abilities.  The ALJ noted that Dr. Wilson's findings were consistent with clinical indications of loss of grip strength in Plaintiff's right hand and loss of flexion in her right wrist, and, also, a slight loss of range of motion in her right wrist. (AR 19, 219.)  Thus, the RFC assessment appears to be well supported by clinical findings in the record.  It would not appear that Plaintiff is complaining that the ALJ failed to adopt the findings of Dr. Klein, the CE, since Dr. Klein failed to assess any functional limitations regarding Plaintiff's right upper extremity.  Thus, Plaintiff principally bases her contention of error on the ALJ's failure to fully adopt the ME's testimony with regard to right upper extremity limitations, and the opinion he rendered regarding Plaintiff missing work.  From a legal posture, the ALJ was not required to adopt, in whole or in part, the opinion of the non-examining, testifying ME.  Ninth Circuit case decisions make it clear that such opinions may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. See Morgan v.

4

Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  In this case, there is no medical evidence in the record either consistent with or which would support the ME's testimony that Plaintiff would miss more than three days of work per month, or indeed, as he testified, most days.  Simply put, the ME's opinion is inconsistent with and unsupported by any evidence in the record, and is thus not entitled to be treated as substantial evidence.  The Court also held, in Morgan, that, "the opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." (169 F.3d at 602, citing Lester v. Chater, 81 F.3d 821 (9th Cir. 1996).  Finally, the right upper extremity limitations which the ALJ incorporated into the RFC, while not syntactically identical to those assessed by the ME, are substantially identical.  Even if the law was different, and required the ALJ to adopt the ME's assessment, there would be no error.

For the foregoing reason, Plaintiff's first issue has no merit.

Plaintiff's second issue is the ALJ improperly rejected her credibility.

In evaluating Plaintiff's credibility, the ALJ identified a number of factors, which the Court has summarized from the decision, including the following:

1. Her activities of daily living ("ADLs");
2. Her completion of a vocational rehabilitation course and that she looked for work;
3. Inconsistency between her subjective complaints and her physical examinations;

    4.    Lack of need for assistive devices to ambulate and a normal gait;

    5.    Lack of significant asthma exacerbations after May 2003, and a demonstration of pulmonary improvement on a prescribed treatment regimen;

    6.    That she is not taking strong pain medications commensurate with the level of pain she alleges, and there are no significant side effects from the medications;

    7.    No experience of appetite disturbance due to pain;

    8.    No sleep disturbance due to pain;

    9.    No evidence of muscle wasting or atrophy;

    10.    That she is neurologically intact;

    11.    No cognitive deficits due to pain or mental disorders;

    12.    Panic attacks described as mild;

    13.    Clinical improvement after carpal tunnel relief surgery on the right side in 2002;

    14.    No opinion by any physician that she is disabled or has functional limitations more restrictive than those established by the ALJ;

    15.    Poor demeanor as a witness at the hearing.

(AR 20-21.)

Plaintiff addresses only some of these reasons in her portion of the JS. In particular, Plaintiff asserts that the ALJ ignored the findings of the CE and of Dr. Wilson; that she is in fact taking strong pain medication; that she has had sleep disturbance due to anxiety and depression; and that the ALJ's assessment that Plaintiff's demeanor at the hearing was poor is not supported by any particular

6

instance cited in the decision.  Further, Plaintiff asserts that the ALJ mischaracterized the extent of her ADLs, and the impact of her attendance at vocational rehabilitation. (JS at 9-12.)

The Commissioner, to the contrary, asserts that the ALJ carefully considered the evidence in the record in making his determination of credibility.  As supporting detail, the Commissioner notes that the ALJ correctly noted that the objective medical evidence did not support the existence of a disabling impairment which could reasonably be expected to produce Plaintiff's symptoms; that the record does demonstrate improved function following carpal tunnel surgery, and in fact an assessment by the CE that the situation had resolved; that her treatment was generally conservative as compared to the severity of her subjective complaints; that she had a positive reaction to her medications; and that the ALJ's consideration of her enrollment in and completion of vocational rehabilitation was appropriate and correct. Finally, the Commissioner argues that the ALJ made an appropriate finding with regard to her demeanor as a witness. (JS at 12-15.)

There is, of course, substantial law, both in the form of regulation and case authority, concerning the assessment of a person's credibility in the Social Security context.  Much of that law has been cited by the parties in the JS.  In a case where the record does establish the existence of a medically determinable impairment that could reasonably give rise to the symptoms reported by a claimant, it is the ALJ's responsibility to make a credibility finding. See Soc. Sec. Ruling 96-7p (July 2, 1996); 20 C.F.R. §§404.1529, 416.929; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  Generally, it is required that if a person is found not credible, specific findings must be rendered, and are to be supported by clear and convincing

7

reasons.  See Smolen, 80 F.3d at 1282-84.

In Plaintiff's case, it cannot be disputed that the record does establish the existence of impairments which could have given rise to severe pain and functional limitations. The question then, is whether there is specificity in the ALJ's decision, and whether the specific findings which were made are supported by clear and convincing reasons.

The parties first focus on the objective medical evidence. Plaintiff again points to the evaluations of the CE and of Dr. Wilson, which certainly confirm loss of grip strength, knee pain, and a decreased range of motion in her spine.  While a credibility assessment may not be based solely upon lack of objective medical support, it is also clear that an ALJ may reject a claimant's assertions about severity of symptoms if such assertions are not consistent with or are contradicted by the objective medical evidence. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). In this case, the ALJ correctly observed that while there were some limitations in Plaintiff's functional abilities (and indeed, these were considered in determining the existence of severe impairments), her ranges of motion throughout her body had been determined to be in the grossly normal range (AR 283-284); that the medical records did indicate improved function following carpal tunnel surgery, and in fact, Dr. Klein opined that that situation had resolved. She was described by physicians as having a normal gait and there was no requirement of assistive devices for ambulation despite her morbid obesity. The record also substantiates the ALJ's conclusion that Plaintiff did have a positive reaction to medications, including control of her asthma. The Court does not agree with Plaintiff's

contention that the ALJ mischaracterized the effect of Plaintiff's enrollment in vocation rehabilitation, or that he was incorrect in assessing her ADLs. With regard to this factor, for example, the ALJ simply summarized relevant aspects of Plaintiff's own testimony at the hearing (see AR at 20, 424), which Plaintiff does not assert was an incorrect summary.

The Court would agree with Plaintiff as to one factor cited by the ALJ; that is, that her demeanor at the hearing while testifying as a witness was poor. (See AR at 21.) The Court's role in credibility assessment review is to determine whether the reasons cited are specific and legitimate, and are supported by clear and convincing evidence. That review function would be eviscerated if the Court were to simply accept an ALJ's assessment of a claimant's demeanor at a hearing, without there being anything in the record of that hearing to review. Nevertheless, the notation in the decision of Plaintiff's demeanor was only one of numerous factors cited by the ALJ, which the Court has determined to be sufficient to support the credibility assessment.

In Plaintiff's third issue, she asserts that the ALJ failed to ask a proper hypothetical question to the VE. In particular, she asserts that inclusion in the hypothetical of an ability to sit six out of eight hours in a workday was incorrect, and further, the failure to include the ME's limitations regarding repetitive motions and fine manipulation and gross handling was also error. With regard to the ME's limitations, the Court has already addressed that contention, concluding that the ALJ was not required to literally adopt all of the conclusions of the ME.

Plaintiff also contends that error was committed by the ALJ in

1 the hypothetical limitations relating to mental impairments. (<u>See</u> JS
2 at 3, AR 440.)  In particular, Plaintiff asserts that when the VE was
3 given a hypothetical which included an impairment that more than
4 mildly limits social functioning and capacity to concentrate with
5 regard to simple tasks, the VE indicated Plaintiff could not perform
6 the two jobs he had previously identified.  After a colloquy between
7 the VE and the ALJ, the VE's testimony was that with less than mild
8 limitations such a person would be able to perform these occupations.
9 (AR at 440.)  As the Commissioner correctly points out, however, the
10 mental RFC determined by the ALJ did not incorporate any such
11 limitations. (<u>See</u> AR at 19.)  Further, Plaintiff asserts that the RFC
12 as determined limited Plaintiff to no public contact, and would
13 therefore preclude a finding that Plaintiff is unable to perform the
14 jobs cited by the ALJ: call-out monitor and surveillance system
15 monitor.  Plaintiff provides no support for this argument, and indeed,
16 the testimony of the VE, under cross-examination by her attorney,
17 supports the ALJ's conclusion that Plaintiff could do this job despite
18 a restriction concerning public contact. (<u>See</u> AR at 441-442.)

19   In her fourth issue, Plaintiff incorporates her contention that
20 the ALJ did not properly consider her morbid obesity. (JS at 19.)  In
21 making this argument, Plaintiff cites this Court's reported opinion in
22 <u>Stack v. Barnhart</u>, 327 F.Supp.2d 1175, 1178 (C.D. Cal. 2004).  This
23 Court's opinion in <u>Stack</u>, however, was effectively superceded by the
24 Ninth Circuit's opinion in <u>Burch v. Barnhart</u>, 400 F.3d 676 (9th Cir.
25 2005).  Among other things, <u>Burch</u> affirmed that it is the claimant who
26 bears the burden of proving that she has a disabling impairment, and
27 in particular, the burden extends to demonstrating how obesity
28 exacerbates other impairments or otherwise contributes to disability.

Plaintiff's case is similar to the factual scenario in <u>Burch</u>, in that she has failed to present any evidence or theory to demonstrate that her obesity contributed to her disability, or that it was not properly considered.

Plaintiff's final issue is that the ALJ failed to accurately summarize the record, and in particular, Plaintiff finds error in the ALJ's notation that there are no treating physician opinions of record. (JS at 22.)  The Court has already addressed this in footnote 1, and sees no need to expand that discussion in dealing with this issue.

For the foregoing reasons, the decision of the Commissioner will be affirmed and the matter will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED:  November 9, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE